

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Gentlemen:
Opinion No. 0-3665
Re: Constitutionality of S.B.
301, 47th Legislature

In your letter received by this office on June 8, 1941, you call our attention to S.B. 75, 46th Legislature, same being Article 911d, Vernon's Annotated Civil Statutes, defining what may be called motor travel ticket "brokers" and subjecting them to regulation of the Railroad Commission, and which we found to be constitutional and valid in our opinion No. 0-657. The 47th Legislature having enacted S. B. No. 301 into law, defining "transportation agents" and placing them within the jurisdiction and under the regulation of the Railroad Commission, you request our opinion in response to these questions:

"1. Is the attached bill valid and constitutional?

"2. Under which law are we bound to proceed?

"3. Is the former bill repealed by the latter bill in whole or in part?

"4. If in part only which portions of the old bill are still operative?

"5. No money is appropriated for the enforcement of either bill; and, in view of this fact, may the Commission use any other monies in the administration and enforcement of either of these bills in whole or in part?"

A reading of said two Acts plainly shows that they both deal with the same subject matter, that is, the regulation of the business generally referred to as "travel bureaus."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Railroad Commission of Texas, page 2

As respects your first question, there is only one difference between the two Acts, which in our opinion merits discussion.

Section 11 of Article 911d, reads:

"Each and every broker shall keep an accurate record of each and every contract, agreement, or arrangement for transportation which he or it may make with every person traveling, or desiring to travel, with whom the broker may contract or arrange transportation, on such form and containing such information as the Commission may prescribe and require. Such record shall be open to inspection to any sheriff, constable, County or District Attorney, and to any officer, agent, inspector, or other employee of the Railroad Commission at all times. Such records shall not be destroyed until after the expiration of three (3) years, and then only after an order of the Commission authorizing the destruction thereof."

Section 6 of the more recent Act provides:

"Every transportation agent shall maintain and keep for not less than two (2) years, an exact record, on forms to be provided by the Commission, of all transactions as such agent, including: (1) amount paid to him by each person transported, and by any motor carrier, and name of each such payor; (2) point of destination; (3) name of motor carrier; (4) name of driver of the vehicle used; and (5) license number or other identification plate number, and make and motor number of the vehicle. Every transportation agent shall, by the tenth (10th) day of each month, file with the County Clerk of the county in which he is licensed to do business under this Act, a verified copy of the above record for the month next preceding the date of such filing, and the County Clerk shall keep such records for

Railroad Commission of Texas, page 3

> not less than two (2) years from the date of fil-
> ing, and the same shall be subject to inspec-
> tion by any person as public records.  A certi-
> fied copy of such records, or any part thereof,
> duly certified by the County Clerk in whose
> office they are on file, shall be received as
> competent evidence in the trial of any case
> wherein the actions of the transportation a-
> gent making such records are in issue, or in
> any hearing before the Railroad Commission, or
> under its jurisdiction, involving the actions
> of the transportation agent making such records."

The new legislation thus provides that the records required to be kept by transportation agents shall be filed in the offices of the county clerks, shall be open to inspection of all persons, and certified copies thereof may be received in evidence in certain cases.  The operation of such travel bureaus is a business in the nature of which its operation will frequently tend to bring about encroachments upon regularly certificated carriers and is so closely connected with the public interest that the requirement that such records shall be filed in the county clerks' offices and the provision that certified copies thereof may be received in evidence in certain cases clearly are reasonable and within the power of the Legislature to make. And, the Railroad Commission, its employees and other enforcement officers of the State in the performance of their duties would have the power to inspect such records. Whether other persons, private parties, would have such right of inspection, and if so, under what conditions, are questions which we do not attempt to determine.  The answers to those questions, whatever they might be, would not affect the valid- ity of the Act as a whole.  In line with our prior opinion, No. O-657, we answer your first question in the affirmative.

We now address ourselves to your second, third and fourth questions.

From the opinion of Judge Short of the Commission of Appeals, in the case of Bank v. Lee County Cotton Oil Company, 274 S. W. 127, at page 130, we copy:

Railroad Commission of Texas, page 4

"In the case of St. Louis S. W. Ry. Co. v.
Key et al., Justice Gaines, speaking for the
Supreme Court of Texas, in discussing a similar
question, uses this language:

"'If article 4227, as amended, repeals arti-
cle 279, it is a repeal by implication. Such
repeals are not favored, and unless there be a
repugnancy or inconsistency between two statutes,
the general rule is that the latter will not re-
peal the former in the absence of express words
to that effect. But the question of repeal, like
every other question arising upon the construc-
tion of a statute, must be solved by determining
as near as may be the intent of the Legislature'-
citing Rogers v. Watrous, 8 Tex. 65; Ex parte
Valasquez, 26 Tex. 178; Cain v. State, 20 Tex.
355.

"He continues in the same case:

"'In Rogers v. Watrous (8 Tex. 65, 58 Am.
Dec. 100), supra, Judge Wheeler says: "A subse-
quent statute revising the subject-matter of a
former one, and evidently intended as a substi-
tute for it, although it contains no express words
to that effect, must operate to repeal the former
to the extent to which its provisions are revised
and supplied, so though a subsequent statute be
not repugnant in its provisions to a former one,
yet if it was clearly intended to prescribe the
only rules which should govern, it repeals the
prior statute."'

"The general rule, enunciated above by the
American and English Ency. of Law, supra, and
approved by the Supreme Court of this state by
Judge Wheeler, which was followed by Judge Gaines,
as above stated, is also enunciated in Chiles v.
State, 1 Texas. App. 32, holding the act prohi-
biting tenpin alleys to be repealed by a later
one providing for licensing them, and in Dickenson

v. State, 38 Tex. Cr. R. 479, 41 S. W. 759, 43 S. W. 520, holding that the game law is implied- ly repealed by a later statute, and in Tunstall v. Wormley, 54 Tex. 481, holding an act concern- ing churches is repealed by a law concerning corporations. We have been unable to find any authority bearing directly on the subject which holds to the contrary.

"In the case of State v. Houston Oil Com. of Texas (Tex. Civ. App.) 194 S. W. 432, Chief Justice Key, in discussing a similar question, says:

"'The rule is well settled that, when a sub- sequent statute shows by its context that it was intended to embrace all the law upon the subject dealt with, such statute will, by implication, repeal all former laws relating to the same sub- ject. The correctness of that rule is not con- troverted, and it is unnecessary to cite author- ities in support of it.'"

We quote from State v. T. & No. O. Ry. Co., 125 S. W. 53, error denied, at page 55, as follows:

"Unless there be a repugnancy or inconsis- tency between two statutes, the general rule is that the latter will not repeal the former in the absence of express words to that effect. But the question of repeal, like every other question arising upon the construction of a statute, must be solved by determining as near as may be the intent of the Legislature. Railway v. Kay, 85 Tex. 559, 22 S. W. 665; Rogers v. Watrous, 8 Tex. 62, 58 Am. Dec. 100. In the case first cited Judge Gaines quotes with approval from Rogers v. Watrous as follows: (the same quotation is made as has already been copied above.)"

S. B. 301, 47th Legislature, covers the field former- ly occupied by S. B. 75, 46th Legislature, and in our opinion

Railroad Commission of Texas, page 6

entirely supersedes the same. You should proceed under S. B. 301, the former Act being completely repealed thereby.

We now turn to your fifth question and in view of the fact that no appropriation is made for the avowed purposes of administering the Act, you request our opinion as to whether the Railroad Commission may use any other moneys available to the Commission in the administration and enforcement of the same.

S. B. 301 provides for the issuance by the Railroad Commission of licenses to transact the business of a "transportation agent," the Commission must require the applicant to furnish bond in the sum of $1,000.00, the Commission is empowered to make appropriate rules and regulations, and a person is prohibited from engaging in the business "without a license duly issued by the Railroad Commission," upon pain of criminal punishment. The bill contains an emergency clause and was passed in such manner as to become immediately effective. Caples v. Cale, 102 S. W. (2d) 173. Quite evidently it was the intention of the Legislature to impose these additional duties, that is, the administration and enforcement of this Act, upon the Railroad Commission, and for the same to be currently performed by the Commission and its employees upon the general appropriations made for the operation of such Department. We call attention to the appropriation for the Motor Transportation Division for the years 1939-1941, pp. 200 to 203, of Vol. 2, Acts 46th Legislature, and for the next biennium, pp. 131-132, in a supplement to the Senate Journal, S. B. 423, 47th Legislature. Such appropriations are made in such terms as will authorize the officers and employees therein provided for to perform these additional duties so cast upon the Commission and to use appropriate parts of the "Maintenance and Miscellaneous" appropriations in administering this Act. We therefore answer your fifth question in the affirmative, as to S. B. 301.

APPROVED JUL 21 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

GRL:db

