CHARLES TUNSTALL V. WALTON WORMLEY ET AL.

(Case No. 606.)

1. STATUTES CONSTRUED.— The act of 1845, concerning churches (Pasch. Dig., art. 483), was repealed by the general law concerning corporations, passed in 1874 (p. 139).

2. REPEAL OF STATUTE.— Though the repeal of a statute by implication is not favored, a subsequent statute, revising the subject matter of a former one, and evidently intended as a substitute for it, must operate as a repeal of the former.

3. PARTIES — CORPORATIONS.— A church association, which, after the passage of the act concerning corporations of 1874, failed to organize under the provisions of that act, and file its charter with the secretary of state, was incapable of suing as a corporation, or of holding real estate.

4. PARTIES.— A suit may be maintained by one or more of the beneficiaries of a charity for the benefit of all, against a trustee, when the parties are numerous, when the trustee attempts to pervert the trust fund to improper uses, or to deprive the beneficiaries of its enjoyment.

APPEAL from Brazoria. Tried below before the Hon. A. P. McCormick.

Suit by Wormley, for himself and numerous other parties, alleged to have formed themselves into an association for religious and charitable purposes under the name of the "Missionary Baptist Church," for the recovery of a lot of ground and improvements in Brazoria, against the appellant Tunstall and others.

The petition charged that plaintiff, and those for whom

Statement of the case.

he sued, formed themselves into such association in 1866, and became the owners of the lot; that the deed for it was made to Tunstall in trust to hold for the benefit of that association; that in 1875 they desired to remove Tunstall and demanded possession of the premises from him, which he refused to deliver, and withheld the same from them; that in September, 1875, he made a lease of the property to his co-defendants, and he and they were in possession.

An amended petition averred that since the institution of the suit, the association for whose use the suit was brought had organized themselves under the statutes as a church congregation, and appointed as trustees for such church organization Monday, James and John Evans; that a certificate of their appointment had been filed and recorded in the county clerk's office; that the organization was composed of the same persons for whose use the suit was originally brought, and they prayed that the suit might be prosecuted to judgment in the name of the Missionary Baptist Church; that the property was conveyed to Tunstall for their use and occupation as a place of worship, but he now prevented them from using it and denied their right.

It is alleged that no particular or formal mode of organization has ever been adopted by the Baptists, or members of the congregation following that faith in the county; that the president of the meeting at which the church was organized was pastor of the church and signed the certificate of the appointment of trustees.

The defendants pleaded a general demurrer, and excepted specially —

1. That the petition did not show that the alleged association was incorporated.

2. That the issuance of a certificate signed by the president and secretary of the meeting was insufficient.

They also pleaded the general denial.

The general and special exceptions (after amendment filed) were overruled. The case was submitted to a jury, which found a general verdict for the Missionary Baptist Association in the town of Brazoria, and there was judgment thereon "that the Missionary Baptist Church of Brazoria" recover of the defendants the premises.

Defendants moved for a new trial on the ground —

1. That the court erred in overruling defendant's demurrers.

2. That the verdict did not support the judgment and was contrary to law and evidence.

The motion for a new trial was overruled and defendant Tunstall appealed.

Upon the trial it was proved that on the 18th of September, 1874, the pastor and trustees of the Methodist Episcopal Church conveyed to Tunstall, one of the trustees of the Missionary Baptist Church, the lot in controversy, to hold as trustee. This conveyance was duly authorized by resolution of the quarterly conference. Plaintiff read in evidence a certificate of a meeting held after notice to the members of the Missionary Baptist Church of Brazoria for organization and the election of trustees for that denomination. This certificate was signed Walter Wormley, president, Edward Hamilton, secretary, by whom it was acknowledged on the 28th of September, 1875, before the clerk of the county court, and it was recorded October 1, 1875.

Wormley testified that Tunstall bought the lot and invited witness and members of the Baptist Church to join him in obtaining subscriptions to build a church for their congregation on it. The church was built and used as a place of worship by the Baptist congregation of which Wormley and Tunstall were members. It was called the Missionary Baptist Church, but never legally organized until October, 1875. No form was adopted by the Baptist Church to organize under the law. Tunstall kept

the key of the church.  In 1877 the Methodists claimed the lot.  Tunstall paid them twenty-five dollars, and took and accepted from them the deed to him as trustee.  Witness was pastor of the Baptist Church and signed the certificate.

Kelsey testified that a short time before this suit was brought Tunstall locked the church against the congregation, and refused to allow them to worship as before. Tunstall declared, after receiving the deed from the Methodists, "that the difficulty was settled and the church belongs to us, 'the Missionary Baptist Church.'"

The defendant produced in evidence a deed to himself, Davis and Dickson, as trustees for the Methodist Episcopal Church (colored), from McMaster, dated in April, 1867, and for himself testified that he bought the lot in his own name; always claimed it as his own; never claimed it for any church, paid for it with his own money; paid Breese (the Methodist minister) the twenty-five dollars, but afterwards rented out the house and got his money back; that he could not read; did not know what was in the deeds; did not buy the lot as trustee; that Wormley wanted to say who should preach and who not.  He testified, as the other witness, to the collection of subscriptions for the building of the church, and the building of it, claiming to have done his share of the work.

The errors assigned were —

1. Overruling defendant's demurrers.

2. Neglecting to instruct the jury as to the legal effect of the deed from McMaster to Tunstall.

3. Admitting the certificate in evidence.

4. Refusal of a new trial.

5. That the judgment was unsupported by the verdict.

There are no charges in the transcript, and the objection to the admission of testimony states no ground of objection.

*Eugene J. Wilson,* for appellant.

*Thomas G. Masterson*, for appellee.

QUINAN, COMMISSIONER.— It is insisted by the appellant
that his exceptions to the plaintiff's petition should have
been sustained; that the "Missionary Baptist Church"
was never so organized as to become a corporation capa-
ble of holding property, of suing and being sued. It is
contended that the act of 1845 concerning churches (Pasch.
Dig., art. 483), was repealed by the general incorporation
law of 1874, p. 139. That law purports to repeal only
those provisions of the former laws which were in conflict
with it. It provided that religious societies might become
bodies corporate under that act, and have all the powers
and privileges, and be subject to all the restrictions, con-
tained in it. It does not specially repeal the former law,
but provides, as that law did, for the election of trustees
for the management of the secular affairs of such socie-
ties. The old law was imperfect and very general in its
terms. The law of 1874 is full and ample. It seems very
clearly to have been designed to embrace and regulate the
organization, powers and privileges of private corpora-
tions of all sorts. It provides that religious societies may
have and file their charter, defining their objects and pur-
poses, as other corporations, in the office of the secretary
of state, and not in the county clerk's office. There is no
power or capacity which under the old law was conferred
upon churches, which is not provided for and regulated
under the later law. And though the repeal of a law by
implication is not favored, we think that under the well
established rule that a subsequent statute revising the
subject matter of a former one, and evidently intended as
a substitute for it, must operate as a repeal of the former,
we must hold that the act of 1845 is superseded by the
general law concerning private corporations. It was
manifestly, in our opinion, intended to prescribe the only
rules which should govern in such cases, and as a substi-

tute for the old law.  Rogers *v.* Watrous, 8 Tex., 64;
Bryan *v.* Sundberg, 5 Tex., 423; Cain *v.* The State, 20 Tex.,
370; Sedgwick on St., 104.

It follows that as the petition of the plaintiff in this
case shows that the Missionary Baptist Church of Brazo-
ria was never organized under the provisions of the act
of 1874, that no charter was drawn up for it or filed in
the office of the secretary of state, it did not form a "pri-
vate corporation;" it was incapable, as a corporation, of
suing or being sued, or of holding real estate; that it had
no corporate name or existence, and therefore that the
demurrer of the defendant should have been sustained.

But if it were conceded that the old law continued in
force, the same result would have followed.  By that law,
if the trustees were duly elected, and the certificate pro-
vided for it duly recorded, it is the trustees who were
incorporated and declared capable of suing and holding
property.  The Missionary Baptist Church, by that name,
could maintain no suit and was no person in law capable
of holding property.

For the same reasons the verdict and judgment in the
case are erroneous.  A verdict for the Missionary Baptist
Church or association, as the pleadings and proof show,
is a verdict for no person in law.

It may not be improper to observe that this suit, as first
brought, was well brought.  It was by the amendments
that the pleadings were rendered vicious.  The convey-
ance to Tunstall in trust was for a charitable use.  If he
abused that trust and attempted to pervert the property
to other purposes, and deprived the beneficiaries of the
enjoyment of it in the contemplated mode, the courts
were open to them for the redress of their grievance.  In
such case a suit may well be maintained by one or more
of the beneficiaries, for the benefit of all, where the parties
are very numerous, and equity will interpose to compel
the due execution of the trust by the offending or refract-

ory trustee, by divesting him of the property, if necessary, and appoint a new trustee.   Story's Eq., pp. 94, 97, 114; Story's Eq., sec. 1199.

The proper disposition of this case is to reverse and remand it.

REVERSED AND REMANDED.

[Opinion delivered March 14, 1881.]